1          IN THE UNITED STATES DISTRICT COURT FOR THE
               EASTERN DISTRICT OF VIRGINIA

2                Alexandria Division

3  UNITED STATES OF AMERICA,        )
                             )

4                Plaintiff,    )
                             )

5     v.                  )   CRIMINAL ACTION
                             )

6  JUBAR AHMAD,              )   1:11-cr-554
                             )

7                Defendant.    )
  _____)

8

9                  REPORTER'S TRANSCRIPT

10               CHANGE OF PLEA HEARING

11            Friday, December 2, 2011

12                     ---

13  BEFORE:      THE HONORABLE T.S. ELLIS, III
               Presiding

14

15  APPEARANCES:  STEPHEN M. CAMPBELL, AUSA
               JOHN GIBBS, AUSA
               United States Attorney's Office

16               2100 Jamieson Ave.
               Alexandria, VA 22314

17

18             For the Government

19               BRIAN LEE MIZER, ESQ.
               AAMRA AHMAD, ESQ.

20               Office of the Federal Public Defender
               1650 King St., Suite 500

21               Alexandria, VA  22314

22             For the Defendant

23                     ---

24         MICHAEL A. RODRIQUEZ, RPR/CM/RMR
            Official Court Reporter

25       USDC, Eastern District of Virginia
            Alexandria, Virginia

INDEX

WITNESS:              EXAMINATION BY THE COURT:

Jubair Ahmad                    5

1              THE CLERK:  Case number 11-CR-554, United

2     States of America versus Jubair Ahmad.

3              THE COURT:  All right.

4              Who is here on behalf of the government.

5              ATTORNEY CAMPBELL:  Good afternoon, your

6     Honor.  Stephen Campbell and John Gibbs on behalf of the

7     United States.

8              THE COURT:  All right.

9              And who is here for the defendant.

10             ATTORNEY MIZER:  Good afternoon, your Honor.

11     Bryan Mizer and Aamar Ahmad on behalf of Mr. Jubair

12     Ahmad.

13             THE COURT:  All right.

14             Good afternoon to all of you.  Good

15     afternoon, Mr. Ahmad.

16             DEFENDANT AHMAD:  Good afternoon.

17             THE COURT:  All right.

18             You may be seated.

19             Ms. Ahmad, let's just take care of this

20     right off the bat.  You're not related in any way to the

21     defendant, are you?

22             ATTORNEY AHMAD:  No, your Honor.

23             THE COURT:  I did not think so.  All right.

24     It's a bit like Smith, Jones and other things.

25             ATTORNEY AHMAD:  It is probably more common

1    than that, your Honor.

2           THE COURT:  Well -- and like Nguyen in the

3    Vietnamese community, but Smith and Jones -- and when I

4    went to England, now it seems a hundred years ago, in

5    certain parts of England, Ellis was pretty common.  So

6    there can be that, but we are clear on this record that

7    the defendant, Mr. Ahmad, is not related to Ms. Ahmad,

8    his counsel.  All right.

9           I have these papers and, Mr. Campbell, are

10   these essentially identical to the papers earlier

11   provided to chambers?

12          ATTORNEY CAMPBELL:  Yes, your Honor.

13          THE COURT:  And, Mr. Mizer, I take it you

14   and Ms. Ahmad have had an adequate opportunity to review

15   these papers with your client.

16          ATTORNEY MIZER:  Yes, your Honor.

17          THE COURT:  All right.

18          Mr. Ahmad, come to the podium, please, sir.

19          THE WITNESS:  (Complied).

20          THE COURT:  Mr. Ahmad -- administrator the

21   oath to the defendant, please.

22          (Defendant sworn by clerk).

23          (JUBAIR AHMAD, after having been first duly

24   sworn by the deputy clerk, testified as follows:)

25                        EXAMINATION

1    BY THE COURT:

2    **Q.**    Mr. Ahmad, do you understand, sir, that you are

3    now under now under and if you answer any of the Court's

4    questions falsely, you may be prosecuted for perjury or

5    for making a false statement?

6    **A.**    Yes, sir.

7    **Q.**    Mr. Ahmad, there are three reasons why the Court

8    will ask you a series of questions, and it's important

9    that you understand what those three reasons are.

10             First, the Court will ask you a series of

11   questions to determine from your answers whether your

12   waiver of your right to compel the government to proceed

13   by way of a grand jury indictment on this felony charge

14   against you is a knowing and a voluntary waiver, that

15   is, that you understand all that that right entails and

16   nonetheless wish to give it up freely, willingly and

17   voluntarily.

18             Second, the Court will ask you a series of

19   questions to determine from your answers whether your

20   plea of guilty itself to this charge is knowing and

21   voluntary; that is, that you understand the nature of

22   the charge, that you understand all the possible

23   consequences or punishments that may result from your

24   plea of guilty to this charge, and that you understand

25   all the rights that you'll be giving up by pleading

1    guilty to this charge, and understanding all of that,

2    still wish to plead guilty freely, willingly and

3    voluntarily.

4              And finally, Mr. Ahmad --

5    A.    Yes, sir.

6    Q.    The Court will ask you a series of questions to

7    determine from your answers whether there is a factual

8    basis for your plea of guilty, that is, that you

9    actually did what are you pleading guilty to because in

10   this court, you may not plead guilty to something you

11   did not do.

12             Now, do you understand those as the three

13   reasons the Court will ask you a series of questions?

14   A.    Yes, sir.

15   Q.    All right.  State your full name.

16   A.    Excuses me?  Jubair Ahmad.

17   Q.    All right.  Would you spell that for the court

18   reporter, please?

19   A.    J-u-b-a-i-r, A-h-m-a-d.

20   Q.    And how old are you, Mr. Ahmad?

21   A.    I am 24.

22   Q.    And where were you born, sir?

23   A.    Pakistan.

24   Q.    And are you a citizen of Pakistan?

25   A.    Yes.

1    Q.    What is your current immigration status in this

2    country?

3    A.    I am lawful permanent resident.

4    Q.    You are a permanent resident?

5    A.    Yes.

6    Q.    All right, sir.

7              THE COURT:  And, Ms. Ahmad, I hope you won't

8    mind my saying this, but it's all right with the Court

9    if you sit down.

10             ATTORNEY AHMAD:  Thank you, your Honor.  I

11   thank you.

12             THE COURT:  It's typical for counsel to

13   stand by his or her client, but in your case I would be

14   more comfortable, and I hope you would, if you were

15   seated.

16             ATTORNEY AHMAD:  Thank you.

17             THE COURT:  All right.

18   BY THE COURT:

19   Q.    Now, what school -- did you attend school in

20   Pakistan?

21   A.    Yes, I have high school from there.

22   Q.    And is that after 12 years of study?

23   A.    No, that is actually 12 years.

24   Q.    That is actually?

25   A.    Twelve years of school.

1   **Q.**   Yes, 12 years of school you received a high school

2   degree --

3   **A.**   Yes.

4   **Q.**   -- a diploma?

5   **A.**   Yes.

6   **Q.**   Have you attended college or university?

7   **A.**   I -- no, I did not.

8   **Q.**   And in school in Pakistan I take it that is not

9   conducted in English but in Urdu?

10   **A.**   Yes, it's in Urdu.

11   **Q.**   And where did you learn your English?

12   **A.**   From here.

13   **Q.**   Because it's quite good.  How long have you been

14   in the United States?

15   **A.**   For five years.

16   **Q.**   Did you study English in Pakistan?

17   **A.**   Little bit in school, yes, a little bit, a little

18   bit grammar and about tenses, that is all we study

19   there.

20             THE COURT:  Mr. Mizer, have you and you

21   Ms. Ahmad had any difficulty communicating with your

22   client in English?

23             ATTORNEY MIZER:  No, your Honor, we haven't.

24             THE COURT:  Have you used or found the need

25   to use an interpreter?

1        ATTORNEY MIZER:  No, your Honor.

2        THE COURT:  All right.  Well, I will note

3   that I think his English appears to be quite good, and

4   he has never formally studied it.

5   BY THE COURT:

6   Q.    But it appears, Mr. Ahmad, your English is -- is

7   excellent.

8   A.    Right.

9   Q.    Either you studied if hard or watched a lot of

10  television, one of the two.

11  A.    I spend my time on Internet, actually.  That is

12  why.

13  Q.    All right.  Well, that may be another means?

14  A.    I have been working with Americans to help to

15  speak English.  That is why.

16  Q.    All right.  Well, I am going to ask you next what

17  jobs have you held in the last three years?

18  A.    Well, I was an electrician.

19  Q.    Electrician?

20  A.    Yes.

21  Q.    And where did you work?

22  A.    There is a company in Leesberg, TMC Electric.  I

23  was working for them.

24  Q.    And what did you do as an electrician?

25  A.    Electrical work, commercial work.

1  Q.    And wiring and that sort of thing?

2  A.    Yes, all kinds of electric work.

3  Q.    And did you have to read in English plans and

4  directions?

5  A.    Yes.  Yes.  I mean, most likely there are symbols

6  on the plans.  So, we have to memorize them.

7  Q.    Do you have any difficulty reading or writing

8  English?

9  A.    No, not really.

10  Q.    Do you have any difficulty understanding English?

11  A.    No, I understand English.

12  Q.    Now, tell me again your age, sir.

13  A.    24.

14  Q.    Have you ever been treated for mental illness or

15  addiction to narcotic drugs of any kind?

16  A.    No.

17  Q.    Have you ever been treated for alcohol abuse?

18  A.    No, sir.

19  Q.    Are you currently under the care of any physician

20  or psychiatrist or psychologist for any condition?

21  A.    No, sir.

22  Q.    Are you currently taking any drug or medication,

23  whether prescribed by a physician or otherwise?

24  A.    No, sir.

25  Q.    Is there any reason today, Mr. Ahmad, why you

1    would be unable to understand what's happening in this

2    proceeding today?

3    **A.**    Nope, I am good.

4    **Q.**    You feel all right today?

5    **A.**    Yes, sir.

6    **Q.**    You feel as though you can make decisions about

7    your future today?

8    **A.**    Yes, sir.

9    **Q.**    Have you been furnished with a copy of the

10   criminal information that is the U.S. Attorney's charge

11   against you in this case?

12   **A.**    Yes, sir I did.

13   **Q.**    Have you read it?

14   **A.**    Yes, yes, sir.

15   **Q.**    All right.  Just for purposes of this record,

16   would you read what the charge against you where it

17   begins, "From, on or about," would you read that allowed

18   please?

19   **A.**    (Complied).  "From on or about September 25, 2010

20   to on or about October 16, 2010, in the Eastern District

21   of Virginia and elsewhere, defendant, Jubair Ahmad, did

22   unlawfully, knowingly and willfully provide material

23   support to a designated foreign terrorist organization,

24   LeT, in that he produced and uploaded a video intended

25   to glorify violent Jihad rage by LeT and to recruit

1   others to join LeT."

2   Q.    All right.

3          THE COURT:  And I take that, for purposes of

4   the record, should confirm that Mr. Ahmad is -- has --

5   is literate in English.  He understands, speaks English

6   and reads English.

7   BY THE COURT:

8   Q.    Now, Mr. Ahmad, this charge against you, namely

9   the charge of providing material support to a designated

10  foreign terrorist organization, LeT; that is a serious

11  felony charge, and ordinarily the government could not

12  proceed against you on such a charge without first

13  obtaining a an indictment, that is, an accusation

14  against you by a grand jury.  Do you understand that?

15  A.    Yes, sir.

16  Q.    And have you discuss that had right to compel the

17  government to proceed by way of a grand jury indictment

18  with your counsel?

19  A.    Yes, sir, I did.

20  Q.    And do you understand that a grand jury is

21  composed of at least 16 persons and not more than 23;

22  and if you insisted on having the government proceed by

23  way of a grand jury indictment, then the government

24  would have to present evidence to a grand jury, and at

25  least 12 members of the grand jury would have to

1    conclude that there was probable cause to believe, that

2    means more likely true than not true, that this offense

3    occurred and that you committed it.

4           And here this afternoon we don't know

5    whether a grand jury would or would not indict you; do

6    you understand that?

7    **A.**   Yes, sir.

8    **Q.**   Do you also understand that if you waive, if you

9    give up your right to compel the government to proceed

10    in that fashion then the government won't have to

11    present any evidence to a grand jury and seek an

12    indictment, but instead will be able to proceed against

13    you solely on the basis of the criminal information.  Do

14    you understand that?

15    **A.**   Yes, sir.

16    **Q.**   Do you wish to -- and have you discussed that with

17    your counsel?

18    **A.**   Yes, sir, I did.

19    **Q.**   And are you fully satisfied with the advice and

20    counsel Mr. Mizer and Ms. Ahmad have provided to you?

21    **A.**   Yes, sir.

22    **Q.**   All right.  Do you wish to waive your right to

23    compel the government to proceed by way of a grand jury

24    indictment on this charge against you?

25    **A.**   Yes, sir, I do.

1      Q.     All right.

2                    THE COURT:  The Court in the case of United

3      States against Jubair Ahmad finds that the defendant is

4      fully competent and capable of waiving his right to

5      compel the government to proceed by way of a grand jury

6      indictment and that that waiver is knowing and

7      voluntary.  He may now execute that form, the waiver

8      form, in open court, and I will endorse it.

9                    THE WITNESS:  (Complied).

10     BY THE COURT:

11     Q.     Now, Mr. Ahmad, it is important that you

12     understand all the possible consequences that may occur

13     to you as a result of your plea of guilty.  So I am

14     going to list those for you now.

15                   First, you could be sentenced to a term of

16     imprisonment of up to 15 years.  Fifteen years without

17     parole is the worst that could happen to you in this

18     case.  You could be required to do pay a $250,000

19     punitive fine.  You will be required to pay $100 special

20     assessment.  You could be required to serve three years

21     of supervised release, and if in the course of that

22     supervised release you were to violate any of the

23     conditions of that supervised release, you could be

24     returned to prison for the full supervised release

25     period.  And, finally, as a result of your plea, you may

1    be removed or deported from this country to your country

2    of origin.

3              Do you understand that all of those are

4    possible consequence of your plea of guilty in this

5    case?

6    A.    Yes, sir, I do.

7    Q.    Mr. Ahmad, you have a plea agreement and a

8    statement of facts which it appears that you have

9    signed.  I want the court security officer, Mr. Wood, to

10   hand you what appear to be your plea agreement and

11   statement of facts.  I want you to look at those and

12   tell me whether they are your plea agreement and

13   statement of facts.

14   A.    (Complied).

15   Q.    Is that your plea agreement, Mr. Ahmad?

16   A.    Yes, sir.

17   Q.    Is that your signature that appears at the end of

18   that agreement?

19   A.    Yes, sir.

20   Q.    Does your signature appearing at the end of that

21   agreement mean you have read, understood and agreed to

22   the terms and conditions of the plea agreement?

23   A.    Yes, sir.

24   Q.    All right.  And is that your statement of facts?

25   A.    Yes, sir.

1    Q.    And is that your signature that appears at the end

2    of that document?

3    A.    Yes, sir.

4    Q.    And does your signature appearing at the end of

5    that document mean that you have read the statement of

6    facts and agreed that it is true and accurate in all

7    respects?

8    A.    Yes, sir.

9    Q.    All right.  Now, I am going to summarize the

10   essential terms of your plea agreement with the

11   government.  Pay very careful attention to my summary,

12   Mr. Ahmad, because at the conclusion -- at the

13   conclusion I will ask you whether those are the terms of

14   your plea agreement with the government as you

15   understand it.

16   A.    Right.

17   Q.    Under the plea agreement, Mr. Ahmad, you've agreed

18   to waive indictment and plead guilty to the single count

19   information charging you with providing material support

20   to a designated foreign terrorist organization LeT.

21          And the plea agreement then recites, as I

22   just did, what the maximum penalties are for that

23   offense:  15 years in prison, a fine of up to $250,000,

24   a special assessment of $100 that in your plea agreement

25   you've agreed to pay prior to sentencing, and three

1    years of supervised release to follow any period of

2    incarceration?  And the plea agreement notes, as I did,

3    that if you were to violate any of those conditions of

4    supervised release you could be returned to prison for

5    the full supervised release term.

6            The plea agreement goes on to provide that

7    you are representing in the plea agreement that you are

8    pleading guilty because you are in fact guilty of the

9    charged offense, that you admit the facts set forth in

10   the statement of facts filed with this plea agreement.

11   You agree that those facts establish your guilt of the

12   charged offense beyond a reasonable doubt, and that you

13   understand that the statement of facts will be the basis

14   for the calculation of your advisory sentencing

15   guidelines range.

16           The plea agreement continues, Mr. Ahmad, and

17   provides that you are representing to the Court, you are

18   stating that you are satisfied that your attorneys have

19   rendered effective assistance to you in this case and

20   that you understand that by entering into the plea

21   agreement and pleading guilty you will be giving up your

22   right to a jury trial.  And then the plea agreement sets

23   out very briefly what those rights are that you have in

24   connection with the jury trial, and I'll review those

25   with you in greater detail in an few minutes.

1          The plea agreement continues, Mr. Ahmad, and

2     provides that you understand that the Court has the

3     jurisdiction, that means the power, to impose any

4     sentence on you up to the 15 years statutory maximum and

5     that your sentence hasn't yet been determined.  It's

6     uncertain at this time what sentence you will actually

7     receive.  Any estimate you've received from Mr. Mizer or

8     Mr. Ahmad or from the government or indeed from anyone,

9     those are merely estimates.  They are not promises.

10    They are not assurances.  Indeed, in the plea agreement

11    the government specifically notes that it makes no

12    promise or representation to you concerning what

13    sentence you will actually receive.

14          And the plea agreement also notes that the

15    sentencing guidelines, which once were mandatory, are

16    now merely advisory.  They are only one factor for the

17    Court to take into account in imposing an appropriate

18    sentence.  Now, in the plea agreement you and the

19    government have entered into an agreement as to how some

20    of the guidelines may apply to your case.  That

21    agreement binds you, it binds the government, it does

22    not bind the Court.  I could reach a different result.

23          Now, this agreement is that your base

24    offense level should be 26 and that a terrorism

25    enhancement of 12 points raises it to 38, and is that

1   the criminal history Category 6 is 6 in accordance with

2   Section 3A1.4.  And then the plea agreement provides

3   that if you qualify for acceptance of responsibility

4   credit, two levels, the government has agreed to file a

5   motion for an additional level of credit because of your

6   timely plea and cooperation.

7           Now, the plea agreement goes on to provide

8   that in the face of the uncertainty over what sentence

9   you will actually receive you have nonetheless agreed in

10  the plea agreement to waive your right to appeal the

11  sentence, and you waive that right in any ground.  The

12  only ground you don't waive it on is if I were to impose

13  a sentence beyond the 15 years, which I don't have the

14  power to do.  That would be illegal, and you would never

15  waive that right because it has hasn't occurred yet, and

16  it won't occur.

17          The plea agreement goes on to provide that

18  payment -- that any monetary penalty the Court imposes

19  would be due and payable immediately.  If I set a

20  schedule of payment that's merely a minimum means of

21  collecting the penalty.  The court -- the government

22  could proceed to obtain and judgment and execute on the

23  judgment immediately.

24          You've also agreed to participate in a

25  financial responsibility program regardless of whether

1     the court orders it.

2             The plea agreement also provides that in --

3     that in return for your plea the government has agreed

4     not to prosecute you further in the Eastern District of

5     Virginia for the specific conduct described in the

6     information or statement of facts.  The only exception

7     to that is in the event that the government prosecutes

8     you for committing a crime of violence or engaging in a

9     crime of violence or aiding and abetting or conspiring

10    to commit a crime of violence.  In that event, the

11    government could allege and prove the conduct described

12    in the information or statement of facts.

13            The plea agreement continues, Mr. Ahmad, and

14    provides that you have agreed to cooperate with the

15    government fully and truthfully and to provide the

16    government with all information you have concerning any

17    criminal activity.  In other words, you have agreed to

18    give the government any information you have concerning

19    any criminal activity, not just that that is in the

20    information or statement of facts, but if you know about

21    any criminal activity you are obligating yourself in the

22    plea agreement to disclose that to the government.

23            Now, specifically in connection with your

24    obligation to cooperate, Mr. Ahmad, you've agreed to do

25    the following:  First, you've agreed to testify

1    truthfully and completely at any grand jury's trials or

2    other proceedings.  You've agreed to be reasonably

3    available for debriefings and pretrial conference that

4    may be required by the government.

5         You've also agreed to provide the government

6    with any documents or other materials that may be in

7    your care, custody or control relating in any way to the

8    matters under investigation.  You've also agreed to

9    submit voluntarily to a polygraph examination.  That's a

10   lie detector test to be conducted by an examiner of the

11   government's choice.

12        You have also agreed that the statement of

13   facts that you have signed and made a part of the plea

14   agreement is limited to facts necessary to support the

15   plea and that you will provide additional details in the

16   course of your cooperation.

17        And the plea agreement also notes that

18   simply because you have greed to cooperate, that does

19   not entitle you to violate any state, local or federal

20   law.  Your cooperation, agreement to cooperate does not

21   entitle you to violate any state, local or federal law.

22   And the plea agreement also notes that while you are

23   obligated to cooperate with the government, the

24   government isn't obligated to seek your cooperation.

25        Now, the plea agreement continues and

1    provides that the government will not use any truthful

2    information you provide in connection with your

3    cooperation to prosecute you further unless there is a

4    crime of violence, as I indicated earlier, that is

5    alleged in the future.  Now, what that means is that if

6    you are honest, if you are truthful in your cooperation

7    with the government, the government will not use that

8    truthful information to enhance your guidelines range.

9    The only exception again is that if the government later

10   alleges a crime of violence against you.

11           Now, if, however, you should knowingly

12   provide false, misleading or incomplete information, in

13   other words, if you are not truthful with the

14   government, then the government may seek to be released

15   from its obligations under the plea agreement.

16           And if the government is released by the

17   court from its obligations then the government would be

18   free to prosecute you for any offense it knows about,

19   and in doing so it would be able to use against you all

20   of the information it's obtained from you including the

21   statement of facts that you've submitted, and you would

22   not be able to rely on any statute, rule or

23   constitutional provision to suppress the information,

24   the use of that information against you.

25           The plea agreement continues, Mr. Ahmad, and

1    provides that the U.S. Attorney's Office for the Eastern

2    District of Virginia will not contact any other state or

3    federal prosecuting jurisdiction and voluntarily turn

4    over truthful information.  And if any other prosecutor

5    attempts to use truthful information that you have

6    provided pursuant to the agreement, then the government

7    agrees, the Eastern District of Virginia prosecutor

8    degrees upon request to contact that jurisdiction and

9    request that it abide by the immunity provision of the

10   plea agreement.  But every prosecutor, as the agreement

11   reflects, retains a jurisdiction over whether to use

12   such information.

13           Now, the plea agreement continues, Mr.

14   Ahmad, and provides that in order for you to satisfy

15   your cooperation obligation it isn't necessary that

16   someone be caught and prosecuted and convicted on the

17   basis of information you provide.  All that's necessary

18   in order for you to satisfy that cooperation obligation

19   is for you to provide full, complete, and truthful

20   cooperation.

21           The plea agreement continues, Mr. Ahmad, and

22   provides that you and the government have agreed,

23   indeed, as the law provides, that it is within the

24   government's sole discretion whether to seek a downward

25   departure in your guidelines or reduction of your

1    sentence based on your cooperation.

2           Now, what that means, Mr. Ahmad, is this:

3    If you cooperate with the government, as you are

4    obligated to do and you provide the government with

5    information that in your opinion should be very valuable

6    to the government and should be of such usefulness to

7    the government so as to entitle you, as you see it, to a

8    motion for a downward departure in your guidelines or

9    reduction of your sentence, but the government disagrees

10   with your assessment of the value of the information,

11   perhaps because they already had it or they don't

12   consider it reliable or because it isn't very

13   significant, you cannot in those circumstances force the

14   government to bring the motion because that

15   determination as to how substantial your assistance has

16   been is solely within the government's discretion.

17          However, the exception to that is if the

18   government were to withhold a motion for a downward

19   departure reduction of sentence based on some bad faith

20   or unconstitutional reason such as discrimination on the

21   reason of basis of race, gender, religion or national

22   origin.

23          Now, the plea agreement continues and notes

24   that you understand that pleading guilty to this offense

25   may have consequences with regard to your immigration

1   status.  In other words, it may result in your being

2   removed or deported from this country.  And, indeed, you

3   knowledge in the plea agreement that you are removable,

4   and you agree not to contest any removal proceedings

5   brought against you by Department of Homeland Security.

6           And you agree to request an expedited

7   removal hearing and consent to removal, and you

8   knowingly waive all rights to appeal, reopen, reconsider

9   and otherwise challenge the removal.  And you agree to

10  waive all your rights, including rights to voluntary

11  departure, asylum, withholding of deportation or

12  removal, cancellation of removal, suspension of

13  deportation, adjustment of status and protection under

14  Article III of the convention against torture.

15          And you specifically acknowledge that you

16  have not be persecuted and have no present fear of

17  persecution in Pakistan on account of race, religion,

18  nationality or membership in a particular social or

19  political opinion.  And you also acknowledge that have

20  you have never been tortured in and have no present fear

21  of torture in Pakistan.

22          Now, the only exception to your waiver of

23  all those rights is that nothing in the plea agreement

24  prohibits you from seeking a remedy for facts arising

25  after today.  In other words, if for some reason after

1    today you became the subject of likely torture in

2    Pakistan, you could raise that, but it would have to be

3    on facts and circumstances arising after today.

4              The plea agreement continues and provides

5    that you have agreed to abandon any application for

6    existing immigration benefits.  And you have agreed to

7    cooperate to effect your prompt removal by obtaining

8    travel documents and like and that this plea agreement

9    is binding for purposes of your removal proceeding.

10             And the plea agreement provides that if

11   there is a motion for a breach of the agreement either

12   by you or by the government, the Court will hold a

13   hearing and the party alleging the breach of the plea

14   agreement will have the burden of proving the breach by

15   a preponderance of the evidence.  And, finally, the plea

16   agreement provides that it's the full and complete

17   agreement between you and the government and that there

18   aren't any other secret or side agreement.

19             Now, Mr. Ahmad, are those the terms of your

20   plea agreement with the government as you understand it?

21   **A.**    Yes, sir, I do.

22   **Q.**    Are all of the arrangements that you have, Mr.

23   Ahmad, with the government concerning your plea of

24   guilty to this charge contained in the plea agreement?

25   **A.**    Excuse me.  What did you say?

1    Q.    Yes.  Let me ask it again.  Listen carefully.

2              Are all the arrangements, all of the

3    understandings that you have --

4    A.    Uhm-hmm.

5    Q.    -- with the government concerning your plea of

6    guilty to this charge contained in the plea agreement?

7    A.    Yes, sir, it is.

8    Q.    Has anyone made any other or different kind of

9    promise or assurance to you of any kind whatsoever in an

10   effort to induce you to plea guilty?

11   A.    No, sir.

12   Q.    Anyone tried to force you or to pressure you or to

13   coerce you in any way to plead guilty in this case?

14   A.    No, sir.

15   Q.    Are you pleading guilty then freely and willingly

16   and voluntarily because you are, in fact, guilty?

17   A.    Yes, sir.

18   Q.    All right.  Mr. Ahmad, you'll be sentenced under

19   the sentencing guidelines which once were mandatory and

20   are now advisory.  Have you and Ms. Ahmad and Mr. Mizer

21   discussed how the sentencing guidelines might apply to

22   your case?

23   A.    Yes, I will do.

24   Q.    All right.  You and the government have entered

25   into an agreement to make recommendations to the Court

1    as to how some of the sentencing guidelines might apply

2    to your case, you understand that that doesn't bind the

3    Court?  I could reach a different result?

4    **A.**    Yes, sir.

5    **Q.**    And do you understand that the Court will not be

6    able to determine what advisory sentencing guideline

7    range applies to you until after the presentence

8    investigation report has been completed and you have had

9    a chance to review it and to review it with your counsel

10   and to call to the Court's attention any correction you

11   think should be made to the report and any objections

12   you have to it?  You understand that?

13   **A.**    Yes, sir.

14   **Q.**    And do you understand that even after I determine

15   what guideline range applies to your case, that even

16   then the Court has the power, the authority to impose a

17   sentence that is either less severe than the guideline

18   range or more severe than the guideline range but never

19   greater than the 15-year statutory maximum?

20   **A.**    Right.  Yes, sir.

21   **Q.**    Do you also understand that if you are sentenced

22   to a period of incarceration, you will not be paroled?

23   There is no parole in the federal system.  It has been

24   abolished.

25   **A.**    Yes, sir.

1   Q.   Do you also understand that ordinarily under the

2   law you would have the right to appeal any sentence I

3   impose on you, but in your plea agreement you have

4   waived that right.  You have given it up on any ground?

5   A.   Yes, sir.

6   Q.   Do you also understand, Mr. Ahmad, that if the

7   sentence you ultimately receive is more severe than the

8   sentence you now expect as you stand here this afternoon

9   you will still be bound by your plea agreement and plea

10  and you will have no right to withdraw them?

11  A.   Yes, sir.

12  Q.   Mr. Ahmad, you have an absolute right to plead not

13  guilty and to persist in that plea, and if you do so you

14  have the right to a trial by jury.  Do you understand

15  that?

16  A.   Yes, sir, I do.

17  Q.   Now, incident to that trial by jury, Mr. Ahmad,

18  you have all of the following rights.  This is where I

19  tell you what rights you have at a jury trial so that

20  you'll understand what it is you are giving up by

21  pleading guilty.

22          First, you have the right to the assistance

23  of your counsel, Ms. Ahmad and Mr. Mizer, throughout all

24  phases of the proceeding against you in this case.

25          Next, you have the right to strike ten

1    persons from the panel of perspective jurors for

2    whatever reason you choose, subject only to do the

3    constitutional constraint that neither you nor the

4    government may strike any perspective juror solely for

5    reasons of race or gender.

6              Next, you would have the right to see and

7    hear all witnesses and all evidence against you and have

8    those witnesses and that evidence cross-examined on your

9    behalf.  In other words, you cannot be prosecuted on the

10   basis of secret testimony or secret evidence.  You have

11   the right to see it all.  You have the right to confront

12   it all.  You have the right to have it all

13   cross-examined by your attorney.

14             Next, you would have the right to testify or

15   not to testify.  You have an absolute right to testify.

16   You have a absolute right to decline to testify.  Now,

17   if you elect to decline to testify then the Court will

18   instruct the jury that the jury may draw no inference

19   from your silence.  Indeed, if you elect not to testify,

20   the Court will instruct the jury that when the jury

21   retires to deliberate on its verdict, it cannot even

22   discuss the fact that you have not testified because

23   your right to remain silent is absolute under the

24   Constitution and you may not be penalized for exercising

25   that right.

1          And your rights under the Constitution with

2    respect to a trial by jury exists whether you are a

3    citizen or not a citizen, whether you are legal or

4    illegal.  It's a right you have.

5          Next, you would have the right not to be

6    found guilty unless all 12 members of the jury are

7    unanimous in concluding that the government has proved

8    beyond a reasonable doubt each and every element of the

9    offense charged against you.  Next you would have the

10   right to the issuance of compulsory process and

11   subpoenas to compel the attendance of witnesses and

12   evidence to be presented in your behalf.

13         Now, do you understand, Mr. Ahmad, that all

14   of those are rights you would have if you persist in a

15   plea of not guilty as have you an absolute right to do

16   and insist on your right to trial by jury?

17   **A.**   Yes, sir, I do.

18   **Q.**   And do you understand that by pleading guilty you

19   give up all those rights and there will be no trial at

20   all?

21   **A.**   Yes, sir.

22   **Q.**   Further, Mr. Ahmad, do you understand that you

23   have an absolute right to plead not guilty and to

24   persist in that plea, and if you do so then the

25   government will have to prove beyond a reasonable doubt

1   all of the elements of this offense that you are charged

2   with?  You understand that?

3   A.    Yes, sir.

4   Q.    Now, specifically, what that means, Mr. Ahmad, is

5   this:  That if you persist in a plea of not guilty, as

6   you have an absolute right to do, the government would

7   have to prove all of the following:  First, that this

8   offense occurred on or about September 25, 2010.

9         Now, the government doesn't have to prove

10  that the offense occurred on that specific or particular

11  date, nor does it have to prove that that's the only

12  date on which it occurred, but it does have to prove

13  that the offense occurred on a date reasonably near that

14  date.  Next -- that is between September 25 and

15  October 16th.  In other words, it doesn't have to prove

16  that the offense occurred solely between those two

17  specific dates.  It does have to prove that the offense

18  occurred between dates reasonably near those dates.

19        Next, the government would have to prove

20  that some part of the offense conduct occurred in the

21  Eastern District of Virginia, which is a very large

22  area.  It includes all of northern Virginia, all of

23  central Virginia, and all of tidewater Virginia.

24        Next, the government would have to prove

25  that you unlawfully, knowingly and willfully provided

1    material support to a designated foreign organization,

2    LeT.  So the government would have to prove that the LeT

3    is a designated foreign terrorist organization.  The

4    government would have to prove that you provided

5    material support to LeT.  And material support means --

6    could mean anything from money to supplies to a wide

7    range of things.

8                 THE COURT:  In this case what was it, Mr. --

9                 THE DEFENDANT:  Video.

10                THE COURT:  -- Campbell?

11                ATTORNEY CAMPBELL:  Production and posting

12   of a video.

13                THE COURT:  Right.  All right.

14   BY THE COURT:

15   Q.   All of that can be material support.  And then the

16   government would have to prove, Mr. Ahmad, that you did

17   this unlawfully knowingly and willfully; that is, that

18   you didn't do it by mistake or inadvertence or

19   negligence, but that you did it deliberately knowing

20   that you were providing this material support to LeT.

21                Now, the law doesn't require the government

22   to prove that you knew that LeT was a designated

23   terrorist organization?

24                THE COURT:  That is correct, isn't it,

25   Mr. Mizer?

1          ATTORNEY MIZER:  Yes, your Honor.

2     BY THE COURT:

3     Q.    So The government would have to prove all of that

4     that I have listed, Mr. Ahmad, beyond a reasonable doubt

5     if you persist in a plea of not guilty.  Do you

6     understand that?

7     A.    Yes, sir, I do.

8     Q.    And do you understand that by pleading guilty you

9     give up the right compel the government to prove all of

10    that beyond a reasonable doubt?

11    A.    Yes, sir.

12    Q.    Did you do what's charged in the information, Mr.

13    Ahmad?  That is, did you provide material support to

14    LeT?

15    A.    Yes, sir, I did.

16    Q.    Tell me in your own words, sir, what you did?

17    A.    Well, he asked me to make the video, so I did it

18    for him and --

19    Q.    Who is "him"?

20    A.    Talha.  He belongs to FIF.

21    Q.    All right.  Go on.

22    A.    And I posted a video on YouTube.  I knew this

23    video was going to be used for his organization to

24    promote Jihad.

25    Q.    All right.  And did you do this roughly during the

1    period September of 2010 through October of 2010.

2    **A.**    Yes, sir.

3    **Q.**    Where were you when you did it, Mr. Ahmad?

4    **A.**    At my home.

5    **Q.**    Which is located where?

6    **A.**    Woodbridge.

7    **Q.**    All right.

8             THE COURT:  You may be seated now, Mr.

9    Ahmad.

10            Just a moment.  Mr. Ahmad, would you return

11   for a moment, please.

12   BY THE COURT:

13   **Q.**    Tell me who this person was you provided this

14   information to?

15   **A.**    His name is Talha, Talha Saeed.

16   **Q.**    And what did you understand he was associated

17   with?

18   **A.**    FIF, Falah-i Insaniyat Foundation, that is what

19   the name of the organization.

20   **Q.**    And tell me again what you understood that he was

21   going to use it for.

22   **A.**    Use it for his organization to promote Jihad.

23            THE COURT:  All right, sir.

24            You may be seated now.

25            Mr. Ahmad, I am going to have Mr. Campbell,

1  the prosecutor, now tell the Court what the government

2  would prove if this matter were to go to trial.  Listen

3  very carefully to what he says because when he is

4  finished I am going ask you whether what he has said is

5  true and accurate in all respects.

6          All right.  Mr. Campbell?

7          ATTORNEY CAMPBELL:  Your Honor, had this

8  matter proceeded to trial the United States would have

9  proven the following facts beyond a reasonable doubt:

10  That Mr. Ahmad was born in 1987 in Sialkot, Pakistan and

11  resided in Pakistan until the age of 19.

12          After receiving a visa from the United

13  States Department of State he entered the United States

14  on or about February 19th, 2007.  Since his arrival

15  Ahmad has resided in Woodbridge, Virginia.

16          Lashkar-e-tayyiba serves as the military arm

17  of the political movement Markaz Al-dawa Wal-Irshad.

18  The mission of Lashkar-e-tayyiba, or LeT, is to conduct

19  and promote violent Jihad against those considered to be

20  the enemies of Islam.  The focus of LeT operations has

21  been attacks on the neighboring country of India, in

22  particular the disputed region of Kashmir between

23  Pakistan and India.

24          On or about December 24, 2001, the United

25  States Department of State designated LeT a foreign

1    terrorist organization after determining that LeT

2    committed or posed a significant risk of committing acts

3    of terrorism that threaten the security of U.S.

4    nationals or the national security, foreign policy or

5    economy of the United States.

6             On or about September 25, 2010, while at his

7    residence in Woodbridge, Virginia, Ahmad communicated

8    with and individual named Talha Saeed, who was in

9    Pakistan.  Talha is the son of Hafiz Muhammad Saeed, the

10   leader of Lashkar-e-Tayyiba.  Talha requested Ahmad to

11   prepare a video that would contain a prayer by Hafiz

12   Muhammad Saeed calling for the support of Jihad and the

13   Mujahideen.  In addition, Talha instructed Ahmad to

14   present a variety of violent images on the video while

15   Hafiz Muhammad Saeed's prayer was heard in the

16   background.

17            For example, Talha directed Ahmad to begin

18   the LeT video with a number of pictures of Hafiz

19   Muhammad Saeed, then show scenes where atrocities had

20   been inflicted on Muslims, followed by the activities of

21   the Mujahideen in Kashmir.  At one point Ahmad asked

22   Talha if he wanted to include an image the Mumbai attack

23   to show the power of LeT.  This is a reference to LeT's

24   operation against the city of Mumbai, India, on

25   November 26, 2008, which resulted in the death over 160

```
 1    people including six Americans.

 2              Talha replied that he should not use

 3    anything referring to Mumbai.  Talha recommended that

 4    Ahmad search for Lashkar-e-Tayyiba on YouTube to find

 5    additional images of Mujahideen operations to include in

 6    the video.  Talha further stated that the video will be

 7    popular in Pakistan and will be run continuously on

 8    significant programs and during major presentations.

 9    Ahmad worked on his computer throughout the day to

10    produce that video.

11              On or about September 25th, 2010, Ahmad

12    completed the LeT video and uploaded it to the YouTube

13    account Abudujjana.  The next day Ahmad sent a

14    communication to another person overseas in which he

15    explained that Hafiz Muhammad Saeed son, Talha Saeed,

16    had requested him to prepare the video.  He noted

17    further that it had taken him the whole day to produce

18    the video.  Ahmad's construction of the LeT video was

19    confirmed by an FBI forensic examination of his

20    computer.

21              Your Honor, during this conspiracy with

22    Talha Saeed to produce and post the video Ahmad knew

23    that video would be used by LeT and had reason to

24    believe the video would be used to further and promote

25    LeT and Jihad.  The actions of the defendant in forming
```

 1    the conspiracy with Talha Saeed and producing and

 2    uploading the LeT video were in all respects knowing and

 3    deliberate and were not committed by accident, mistake

 4    or other innocent reason.

 5              THE COURT:  All right.

 6              Mr. Ahmad, return to the podium, please,

 7    sir.

 8              Was that recitation of the facts by the

 9    prosecutor true and accurate in all respects?

10              THE WITNESS:  Yes, sir.

11              THE COURT:  All right.  Mr. Ahmad, how do

12    you now plead to the charge against you in this case,

13    that is, the charge of knowingly and unlawfully,

14    willfully providing material support to a designated

15    foreign terrorist organization?

16              Do you plea guilty or not guilty.

17              THE WITNESS:  Yes, I do plead guilty.

18              THE COURT:  The Court in the case of the

19    United States against Jubair Ahmad finds that the

20    defendant is fully competent and capable of entering an

21    informed plea, and I find that your plea of guilty is a

22    knowing and voluntary plea.  And I also find that it

23    it's supported by an independent basis in fact

24    containing each of the elements of the offense charged

25    against you.  Accordingly, the Court finds -- the Court

1    adjudges you now guilty of the offense of providing

2    material support to a designated foreign terrorist

3    organization.

4            Mr. Ahmad, the Court will order the

5    preparation of a presentence investigation report.  Now,

6    this is a very important document because it's the

7    document on which the Court will chiefly rely in

8    imposing an appropriate sentence.

9            And you have a role to play in its

10   preparation.  You'll being asked by a probation officer

11   to provide information about your family, your

12   background, your education, work experience, your health

13   and financial conditions, your criminal history if any,

14   your version of the offense conduct and indeed anything

15   that might be material in any way to the Court's

16   sentencing decision.  And you may have Ms. Ahmad and Mr.

17   Mizer with you when you provide that information to a

18   probation officer.

19           Now, when the report is completed, Mr.

20   Ahmad, you'll be furnished a copy.  So will your

21   attorneys, and you'll have an opportunity to review it

22   and to reviewed it with need and then to call to the

23   Court's attention any corrections you think should be

24   made to the report or any objections you have to the

25   facts, conclusion or calculations contained in the

1    report.  The government will also have an opportunity to

2    register its objections or corrections.

3              Now, if you dispute the corrections or

4    objections that the government asserts or the government

5    disputes the ones that you assert, then the Court will

6    hold a hearing, permit you to offer evidence, and to

7    cross-examine any evidence offered by the government on

8    the disputed matters.  And then the court will resolve

9    the dispute by issuing findings before imposing

10   sentence.

11             Now, at the time of sentencing, Mr. Ahmad,

12   you'll have the right of allocution.  That means you'll

13   have the right to addressed the Court and to say

14   anything at all you wish to the Court by way of

15   extenuation, mitigation or indeed anything you think the

16   Court should know before sentence is imposed.  You won't

17   be required do address the Court, but you'll have the

18   opportunity to do so if you wish to.  And, of course,

19   your attorneys or one of them will have the same

20   opportunity, that is the opportunity to address the

21   Court on your behalf.

22             I'll set sentencing for February the 24th at

23   9:00 a.m.  Is that date available?

24             ATTORNEY MIZER:  Your Honor, would it be

25   possible, given the nature of this case to set

1    sentencing either in April or early May?

2                    THE COURT:  Yes.  It will be.  What's the

3    reason for that?

4                    ATTORNEY MIZER:  Well, your Honor, there is

5    rather voluminous discovery in this case.  Additionally,

6    we are expecting rather a lengthy legal arguments

7    relating to the Humanitarian Law Project last summer.

8    This is a pretty novel case, your Honor.

9                    THE COURT:  All right.

10                   ATTORNEY MIZER:  There are a number of

11   aspects that would make this different from a normal

12   case.

13                   THE COURT:  All right.  I will permit that.

14   Let's do it then, what's the first -- what about the

15   second Friday in April?  What is the second Friday in

16   April?

17                   ATTORNEY MIZER:  The 13th of April, your

18   Honor.

19                   THE COURT:  Unless you're superstitious, we

20   will set it for then.

21                   ATTORNEY MIZER:  That is fine with defense,

22   your Honor.

23                   ATTORNEY CAMPBELL:  Very well, your Honor.

24                   THE COURT:  All right.

25                   Anything further to be accomplished in this

1    matter today?

2              ATTORNEY CAMPBELL:  Not from the government,

3    your Honor.

4              THE COURT:  For the defendant?

5              ATTORNEY MIZER:  No, your Honor.  Thank you.

6              THE COURT:  All right.

7              I thank Counsel for your cooperation.

8                        ---

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                          CERTIFICATE

3

4                I, MICHAEL A. RODRIQUEZ, an Official Court

5       Reporter for the United States District Court, in the

6       Eastern District of Virginia, Alexandria Division, do

7       hereby certify that I reported by machine shorthand, in

8       my official capacity, the proceedings had upon the

9       change of plea hearing in the case of UNITED STATES OF

10      AMERICA v. JUBAIR AHMAD.

11

12               I further certify that I was authorized and

13      did report by stenotype the proceedings in said change

14      of plea hearing, and that the foregoing pages, numbered

15      1 to 44, inclusive, constitute the official transcript

16      of said proceedings as taken from my machine shorthand

17      notes.

18

19               IN WITNESS WHEREOF, I have hereto subscribed

20      my name this  17th  day of  June           , 2012.

21

22

                                    _____/S/
23                                  Michael A. Rodriquez, RPR/CM/RMR
                                       Official Court Reporter
24

25